UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES W. COLEMAN,<br>*Plaintiff*, | |
| v. | No. 3:23-cv-1581 (JAM) |
| SANDRA CHARLES *et al.*,<br>*Defendants*. | |

ORDER TO SHOW CAUSE
WHY ACTION SHOULD NOT BE DISMISSED
PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Charles Coleman is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 alleging that Connecticut prison officials violated the Eighth Amendment. Based on my initial review of the complaint pursuant to 28 U.S.C. § 1915A, it appears that Coleman has not fully exhausted his administrative remedies. But before dismissing this action for failure to exhaust, I will permit Coleman an opportunity to respond to the concerns set forth in this order.

**BACKGROUND**

The complaint arises from Coleman's incarceration as a sentenced state prisoner at the Cheshire Correctional Institution ("CCI") in Cheshire, Connecticut. The complaint names two defendants in their individual and official capacities: Nurse Sandra Charles and Medical Supervisor John Doe.[1]

The following facts alleged in the complaint are accepted as true for the purpose of initial review only. On or about November 11, 2020, Coleman's blood pressure medication was altered by CCI medical staff.[2] He filed an Inmate Request Form (CN 9601) on November 25 noting that

---

[1] Doc. #1 at 1.
[2] *See id.* at 14.

1

the new medication caused dizziness, made his "neck and shoulders stiff," and gave him "upper chest and upper back pain."[3] Coleman was seen on November 30 by Nurse Charles, who noted that the dizziness was "not related to med change."[4]

On December 4, 2020, Coleman fell on the floor of his cell.[5] He was "dizzy," felt "hot," and was "pouring down sweat."[6] While attempting to get water, Coleman "hit [his] head on the cell door and fell out on the floor" again.[7]

In the wake of the December 4 incident, Coleman filed several grievance forms that he has attached to his complaint:

- On December 28, 2020, Coleman filed an Inmate Administrative Remedy Form (CN 9602) against Nurse Charles for "keeping [him] on this medication," even after he told her it made him "dizzy," and "causing [him] injuries."[8]

- On December 31, 2020, Coleman filed an Inmate Request Form (CN 9601) seeking medical care for stiffness and pain in his neck, shoulders, back, forehead, and knee.[9]

- On February 1, 2021, Coleman filed another Inmate Request Form (CN 9601), again seeking medical care for his neck, shoulders, back, forehead, and knee, as well as for his "bloody nose."[10]

- On March 16, 2021, Coleman filed another Inmate Request Form (CN 9601), again seeking medical care for his neck, shoulders, back, forehead, knee, and nose.[11]

---

[3] *Id.* at 5 (¶ 9), 14.
[4] *Id.* at 8–9 (¶ 11), 14.
[5] *Id.* at 4 (¶ 2).
[6] *Id.* at 4 (¶ 3).
[7] *Id.* at 5 (¶ 5).
[8] *Id.* at 10 (¶ 13). Coleman received a receipt of this filing on January 14, 2021. *Id.* at 18.
[9] *Id.* at 9 (¶ 12), 16.
[10] *Id.* at 10 (¶ 14), 19.
[11] *Id.* at 11 (¶ 15), 21.

- On April 16, 2021, Coleman filed another Inmate Request Form (CN 9601), complaining that he had not received a response to his grievance of December 28, 2020.[12]

- On May 8, 2021, Coleman filed an Inmate Administrative Remedy Form (CN 9602) complaining that he had not received responses to his grievances of December 28, 2020 and April 16, 2021.[13]

- On November 8, 2021, Coleman filed another Inmate Request Form (CN 9601), requesting his medical records and any incident reports from December 4 to 8, 2020.[14]

- On March 28, 2021, Coleman filed another Inmate Request Form (CN 9601), again requesting his medical records and any incident reports from December 4 to 8, 2020.[15]

Coleman alleges that Nurse Charles and her medical supervisor John Doe were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[16] He seeks compensatory and punitive damages.[17]

## DISCUSSION

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963

---

[12] *Id.* at 11 (¶ 16), 23.
[13] *Id.* at 12 (¶ 17), 25–26.
[14] *Id.* at 12 (¶ 18), 27.
[15] *Id.* at 12 (¶ 19), 29.
[16] *See id.* at 5 (¶ 9), 8–10 (¶¶ 11, 13).
[17] *Id.* at 5 (§ E).

F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[18] Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid*.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the remedies can provide the relief that the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

In the ordinary course, "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). But "[a] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Ibid.* Even so, if a court intends to dismiss a complaint because of a prisoner's failure to exhaust administrative remedies, the court must first ensure that the prisoner receives notice of the court's intent to dismiss and has an opportunity to be heard. *See Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir. 1999).

The DOC has two administrative grievance procedures of consequence to this action. The first directive—Administrative Directive 8.9 ("AD 8.9")—governs procedures for responding to

---

[18] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

a prisoner's request for review of health care services. *See generally Cruz v. Naqvi*, 2022 WL 4225491, at *6 (D. Conn. 2022) (describing requirements of AD 8.9). The second directive—Administrative Directive 9.6 ("AD 9.6")—governs prisoner complaints more generally. *See Riles v. Buchanan*, 656 F. App'x 577, 579–80 (2d Cir. 2016) (describing requirements of AD 9.6). Because Coleman's requests related to health care services, his exhaustion is governed by AD 8.9.[19]

AD 8.9 contemplates at least three stages of review for a prisoner seeking a remedy for complaints relating to health services. *See Milner v. Laplante*, 2021 WL 735909, at *2–3 (D. Conn. 2021) (describing requirements of AD 8.9). The first stage is informal resolution, whereby a prisoner must attempt to resolve the issue face-to-face with an appropriate staff member "or" via written request for resolution to a supervisor on an Inmate Request Form (CN 9601).[20] The prisoner must clearly state the problem and remedy requested.[21] If the prisoner makes a written request, a prison official must respond within 15 business days.[22]

The second stage is the filing of a formal request for one of two types of Health Services Review ("HSR"): Diagnosis and Treatment; or Review of an Administrative Issue. To do this, the prisoner must submit an Inmate Administrative Remedy Form (CN 9602) seeking a review of

---

[19] These directives were changed in 2021 when Coleman was filing his grievances. But it is clear from the paperwork that Coleman attached to his complaint that CCI was still providing inmates with forms from previous directives. My analysis of Coleman's exhaustion under AD 8.9 will therefore proceed under the 2012 AD 8.9, even though he filed grievances after the 2021 AD 8.9 was already in effect. *Compare* Administrative Directive 8.9: Health Services Administrative Remedies, Conn. Dep't of Corr. (Apr. 30, 2021) ("2021 AD 8.9"), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf [https://perma.cc/GNN6-ZKYS], *and* Administrative Directive 9.6: Inmate Administrative Remedies, Conn. Dep't of Corr. (Apr. 30, 2021) ("2021 AD 9.6"), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf [https://perma.cc/9FJX-3QU6], *with* Administrative Directive 8.9: Health Services Administrative Remedies, Conn. Dep't of Corr. (July 24, 2012) ("2012 AD 8.9"), https://authoring-uat.ct.egov.com/-/media/DOC/Pdf/Ad/ad0809pdf.pdf [https://perma.cc/W476-377T], *and* Administrative Directive 9.6: Inmate Administrative Remedies, Conn. Dep't of Corr. (Aug. 15, 2013) ("2013 AD 9.6"), https://authoring-uat.ct.egov.com/-/media/DOC/Pdf/Ad/ad0906pdf.pdf [https://perma.cc/82AW-PKJG].
[20] *See* 2012 AD 8.9 at 3 (§ 10).
[21] *Ibid.*
[22] *Ibid.*

either "a diagnosis or treatment including a decision to provide no treatment," or "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider."[23] For diagnosis and treatment reviews, the HSR Coordinator must schedule an appointment with an appropriate health care provider to determine a proper course of action, if any.[24] For reviews of an administrative issue, the HSR Coordinator must render a disposition within 30 days.[25]

The third stage under AD 8.9 is the filing of an appeal. To do this, the prisoner must file an Appeal of Health Services Review (CN 8901) within 10 business days of receiving the unsatisfactory disposition.[26] Notably, the directive does not instruct prisoners about what to do if they receive no response to their HSR. The health services provider must respond within 15 business days of receipt of the appeal.[27]

But it appears that Coleman never requested an HSR in the first place. Instead, he checked the box on his 2021 Inmate Administrative Request Form (CN 9602) to indicate he was "filing a Grievance" rather than "requesting a Health Services Review."[28] *See Fraser v. Durant*, 2023 WL 5486265, at *3 (D. Conn. 2023) (noting that an inmate requesting a Health Services Review is "required to check the Diagnosis/Treatment box" or the "All Other Health Care Issues" box on the CN 9602 form). Because Coleman did not seek an HSR, he did not exhaust his administrative remedies under AD 8.9.

---

[23] *Id.* at 2–4 (§§ 9, 11).
[24] *Id.* at 3 (§ 11(A)).
[25] *Id.* at 4 (§ 12(A)).
[26] *Id.* at 4 (§ 12(B)).
[27] *Id.* at 4 (§ 12(C)).
[28] Doc. #1 at 25. Coleman also filed a CN 9602 in 2020 but he did so before filing a CN 9601, which is a required step under both AD 8.9 and AD 9.6. *See* 2012 AD 8.9 at 3 (§ 10); 2021 AD 9.6 at 6 (§ 6(a)(i)); 2013 AD 9.6 at 5 (§ 6(A)); Accordingly, the 2020 CN 9602 is irrelevant to this analysis.

Even assuming that Coleman intended to "fil[e] a Grievance," and thus proceed under AD 9.6, it does not appear that he exhausted his remedies. AD 9.6 requires that a prisoner first pursue informal resolution, although for general grievances, prisoners "may" pursue verbal resolution and, if that fails, "shall" submit an Inmate Request Form, CN 9601.[29] A prison official must respond to the written request within 15 business days.[30]

If the response is unsatisfactory or if there is no response, a prisoner must then file a formal Level 1 grievance on an Inmate Administrative Remedy Form, CN 9602, within 30 calendar days of the incident that gave rise to the grievance.[31] An official must respond within 30 business days of receipt of the Level 1 grievance.[32]

The third stage is the filing of a Level 2 grievance on an Inmate Grievance Appeal Form, CN 9604, to the District Administrator within 5 calendar days of receiving the unsatisfactory disposition or after no response.[33] An official must respond within 30 business days of receipt of the Level 2 grievance.[34] Under certain circumstances, a prisoner may within 5 calendar days of receipt of that disposition file a Level 3 grievance.[35]

Coleman filed six Inmate Request Forms and two Level 1 grievances. But the record does not disclose that Coleman filed the requisite Level 2 grievance. Therefore, it appears that Coleman did not fully exhaust his administrative remedies through Level 2 of the grievance process as required under AD 9.6.[36]

---

[29] *See* 2021 AD 9.6 at 6 (§ 6(a)(i)(2)); 2013 AD 9.6 at 5 (§ 6(A)).
[30] 2021 AD 9.6 at 6 (§ 6(a)(i)(8)); 2013 AD 9.6 at 5 (§ 6(A)).
[31] 2021 AD 9.6 at 6–7 (§ 6(a)(ii)); 2013 AD 9.6 at 6 (§ 6(C)).
[32] 2021 AD 9.6 at 7 (§ 6(b)(i)(3)); 2013 AD 9.6 at 7 (§ 6(I)).
[33] 2021 AD 9.6 at 7 (§ 6(b)(ii)); 2013 AD 9.6 at 7 (§ 6(K)), 13 (§ 18).
[34] 2021 AD 9.6 at 8 (§ 6(b)(ii)(4)); 2013 AD 9.6 at 7 (§ 6(K)).
[35] 2021 AD 9.6 at 8 (§ 6(b)(iii)); 2013 AD 9.6 at 7 (§ 6(L)).
[36] As noted through the above references, Coleman has failed to exhaust under both the 2021 and 2013 versions of AD 9.6.

Accordingly, it appears that Coleman has not properly exhausted his administrative remedies as required by law. In the event that there is some aspect of the facts or the law that I have overlooked, I will allow Coleman until **May 20, 2024** to file any response to this order to show cause explaining why this action should not be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons set forth above, it appears that this action must be dismissed for failure to exhaust administrative remedies. If, however, Coleman has grounds to believe that this action should not be dismissed, then he may file a response to this order on or before **May 20, 2024**.

It is so ordered.

Dated at New Haven this 6th day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge